# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| JOHN MACK MONTFORD, *on behalf of himself and others similarly situated who consent to their inclusion in a collective action*, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:18-CV-19 (MTT) |
| FORESTRY MANAGEMENT SERVICE, LLC and BRANDAN SPILLERS, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

The Plaintiffs have moved for conditional certification of collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Doc. 15. For the following reasons, the motion is **GRANTED**.[1]

## I. BACKGROUND

On January 18, 2018, Plaintiff John M. Montford filed a complaint against Defendants Forestry Management Service, LLC and Brandan Spillers, stating he was proceeding on behalf of himself and others similarly situated who consent to their inclusion in this collective action under the FLSA. *See generally* Doc. 1. Montford, a former truck driver employed by the Defendants, alleges that the Defendants violated the FLSA by failing to pay overtime wages to him and other similarly situated employees. *Id.* The Defendants answered the complaint, denying allegations that they

---

[1] During the June 28, 2018 teleconference, the Court informed the parties that it would grant the Plaintiffs' motion for conditional class certification. Doc. 29. This Order explains why.

violated any law or that Montford and others similarly situated are entitled to any relief. *See generally* Doc. 5.

On February 26, 2018, Montford moved to add Plaintiffs Winifred Worsham, Richard Turner, Lafonza Towns, Aldwia Tookes, and David Colbert pursuant to Federal Rule of Civil Procedure 15(a)(1)(A).[2]  Doc. 8 at 1.  They are former and current truck drivers employed by the Defendants, and each consented in writing to become opt-in Plaintiffs and filed a "Consent to Join as a Plaintiff" with the Court.  *See generally* Doc. 10.  The Defendants did not object to the motion, which was granted on March 22, 2018.  Docs. 11; 12.  Plaintiffs Jamie Kennington, an equipment loader, and Jeremy Kennington, both an equipment loader and a tree cutter, also were employed by the Defendants and opted into the litigation by filing their written consent to sue with the Court.  Docs. 18-1; 26-1; 27; 28.

The Plaintiffs have now moved to "conditionally certify this case as a collective action on behalf of all persons who worked as truck drivers, loaders, or tree cutters for Defendants within the United States from January 2015 to present" and did not receive overtime compensation.  Doc. 15 at 1-2.  The Plaintiffs also ask the Court to allow them to notify all such persons of the pendency of this case and to order the Defendants to provide the Plaintiffs with a list of their present and former truck drivers, loaders, and tree cutters.  *Id.* at 2.  In their response, the Defendants argue that the Plaintiffs' motion for conditional certification should be denied because the Plaintiffs "have failed to demonstrate that there are any potential opt-in plaintiffs that are interested in joining this action which are similarly situated to Plaintiffs."  Doc. 19 at 3.  In the alternative, the

---

[2] This motion to amend was converted into text-searchable PDF format and refiled on March 1, 2018. Doc. 10.

Defendants ask to the Court to "limit the breadth of the proposed class proposed by Plaintiffs and the notice procedure." *Id.*

## II. DISCUSSION

### A.    Legal Standard

The FLSA requires covered employers to pay overtime compensation to non-exempt employees who work more than forty hours in a workweek.  29 U.S.C. § 207(a).  Section 216(b) provides these employees a right of action against their employers for violations of Section 207.  That action may be brought by employees either individually or in a collective action on behalf of themselves "and other employees similarly situated."  § 216(b).  In a prospective collective action brought under § 216(b), potential plaintiffs must affirmatively opt into the action by filing their written consent with the court.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).  "The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court.  *Id.* at 1219 (citations omitted).[3]

The Eleventh Circuit sets out a two-step approach to certify a collective action under § 216(b).[4]  *Id.*  At the first "notice stage," which is relevant here, the court determines whether notice of the action should be given to potential class members.  *Id.* at 1218 (citation omitted).  In making this determination, the court must ask whether there are other employees who desire to opt in and whether those employees are

---

[3] While *Hipp* involved a collective action under the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, that statute incorporates the FLSA's collective action provision.  Thus, *Hipp* "applies in both contexts." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 n.37 (11th Cir. 2008) (quotation marks and citations omitted).

[4] But as the Eleventh Circuit in *Mickles on behalf of herself v. Country Club Inc.* recently emphasized, this approach is merely a suggestion for district courts "to better manage § 216 cases."  887 F.3d 1270, 1276 (11th Cir. 2018) (quotation marks and citation omitted).

similarly-situated with respect to their job requirements and pay provisions. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008) (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). The plaintiffs bear the burden of demonstrating a reasonable basis for the claim that there are other similarly-situated employees who desire to opt into the litigation. *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Because the court usually relies only on the pleadings and any affidavits submitted by the parties, "a fairly lenient standard" is applied, which "typically results in conditional certification of a representative class." *Hipp*, 252 F.3d at 1218 (quotation marks and citation omitted). If the class is conditionally certified, putative class members are given notice and an opportunity to opt into the action, and the "action proceeds as a representative action throughout discovery." *Id.*

The second stage of the certification process is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* Because at this stage the court has a more extensive and detailed factual record, the standard to show substantial similarity is "less lenient, and the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261 (citations omitted). If the court determines at the second stage that the class representatives (original plaintiffs) and the opt-in plaintiffs are similarly-situated, the collective action proceeds to trial on the merits. *Hipp*, 252 F.3d at 1218 (quotation marks and citation omitted). If they are not similarly-situated, generally the collective action becomes decertified, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed to trial on their individual claims. *Id.*

**B.    Desire to Opt in**

The Defendants first argue that conditional certification is inappropriate because the Plaintiffs "have failed to provide declarations from any potential opt-in plaintiffs," and "there is no language contained in the Plaintiffs' Declarations that others are interested in joining this action." Doc. 19 at 5.  However, while certainly one way of showing that potential plaintiffs seek to join is through the use of affidavits or declarations, that is not necessarily the best, or only, way.  In the Court's view, as well as that of other district courts in the Eleventh Circuit, the "most common way a plaintiff can satisfy the separate, distinct and necessary 'desire to opt-in' requirement is by filing a substantial number of consents from other employees claiming to be similarly situated." *Wentworth v. Tacala, LLC*, 2010 WL 11614318, at *3 (N.D. Ala. 2010); *see also Albert v. HGS Colibrium*, 2017 WL 1682528, at *3 (N.D. Ga. 2017) (finding that because two individuals have already opted into the litigation, "[t]his shows that former employees seek to be members of a collective action, and the desire to opt-in criteria is met"); *Palma v. MetroPCS Wireless, Inc.*, 2013 WL 6597079, at *3 (M.D. Fla. 2013) ("Although there is no magic number requirement for the notice stage, the presence of nine opt-in notices satisfies the Court that other [employees] desire to join in the action.").

Here, there are seven Plaintiffs who have already opted into this litigation by filing with the Court their written consent to sue.[5]  This clearly shows that both former and current employees of the Defendants seek to join this litigation.  Moreover, even assuming as true the Defendants' contention that all of their current employees have

---

[5] As *Mickles* made clear, by filing their written consent to sue pursuant to § 216(b), these opt-in Plaintiffs became party Plaintiffs, and, absent a dismissal from the case, will remain parties in this litigation.  887 F.3d at 1280-81.

individually communicated that they were not interested in joining the action and that four of the opted-in Plaintiffs have also stated no interest, the Court concludes that the "desire to opt-in" requirement is still met based on the remaining three Plaintiffs who opted into the litigation.[6]

**C.     Similarly-situated**

Next, the Defendants argue that "[e]ven if Plaintiffs were able to show interest from potential opt-ins, they fail to prove that those individuals are "similarly situated." Doc. 19 at 6.  According to the Defendants, the Plaintiffs' "attempt to lump several job categories together," such as truck drivers, loaders, or tree cutters, does not satisfy their burden of demonstrating a reasonable basis for conditional certification.  *Id.*  The Court disagrees.  To meet their burden at the notice stage, which again is not heavy, the Plaintiffs may make substantial allegations of class-wide discrimination.  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citation omitted).  The Plaintiffs need only show that their positions are similar, not identical, to those of the potential class plaintiffs.  *Id.* at 1096 (quotation marks and citations omitted).  While the Plaintiffs are not required to show "a unified policy, plan, or scheme of discrimination," such a showing "is a common and effective way to satisfy the 'similarly situated' requirement." *Id.* at 1095; *Albert*, 2017 WL 1682528, at *3.

Here, the Court is satisfied, based on the record and particularly at this stage, that the Plaintiffs have met their burden to establish a reasonable basis that they are similarly-situated to putative class members.  The Plaintiffs' declarations describe their

---

[6] In their reply brief, the Plaintiffs request "an order invalidating the unilateral communication soliciting the opt-out by the four employee Plaintiffs at this stage of the litigation."  Doc. 25 at 5.  That is not necessary. As discussed, these four Plaintiffs are currently parties, and the Defendants' unilateral communication did not affect the Court's determination that the Plaintiffs have satisfied their "desire to opt-in" requirement.

respective position as a truck driver "to drive a lumber truck solely within the State of Georgia from the forest where the trees were cut to Jordan Forestry Lumbar located in Barnsville, Ga."  Docs. 15-1 ¶ 1; 15-2 ¶ 1; 15-3 ¶ 1; 15-4 ¶ 1; 15-5 ¶ 1; 15-6 ¶ 1. Although truck driving is not identical to cutting or loading lumber, as the Plaintiffs point out in their reply brief, the Plaintiffs share a continuity of interest with putative class members in the functions of their job—that is, the process of cutting the lumber, loading the lumber into trucks, and driving the trucks to and from Jordan Forestry Lumbar located in Barnsville, Georgia all leads to the development of other products.  Doc. 25 at 2-3.  This "continuous flow," where "each function follows the next," underscores the similarity among the various positions.  *Id.* at 2.  Moreover, the Plaintiffs each assert in their declarations that they were "never paid time and a half for time worked in excess of 40 hours in a work week as required by Fair Labor Standards Act."  Docs. 15-1 ¶ 4; 15-2 ¶ 4; 15-3 ¶ 4; 15-4 ¶ 4; 15-5 ¶ 4; 15-6 ¶ 4.  This suggests that the Plaintiffs were subjected to a company-wide employment policy of being required to work in excess of 40 hours in a week without overtime compensation.  Thus, the Plaintiffs have satisfied the similarly-situated requirement.

The Defendants, nonetheless, argue that truck drivers "are treated significantly different from 'loaders and tree cutters' (operators)," because they have "different job duties, pay structures, educational requirements, and policy restrictions."  Doc. 19 at 8. The Defendants also contend that joining additional plaintiffs who are not truck drivers "would create separate classes of plaintiffs with separate legal theories and defenses." *Id.* at 9.  However, these issues are more properly addressed during the second, or decertification, stage after discovery is completed.  *Albert*, 2017 WL 1682528, at *4

("The appropriate time to address issues of liability and individual differences between putative class members is after the completion of discovery and during the second stage of the certification determination."); *see also Scott v. Heartland Home Finance, Inc.*, 2006 WL 1209813, at *3 (N.D. Ga. 2006) ("[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage."). Accordingly, the Plaintiffs have met the "fairly lenient" notice stage standard by showing there are other similarly-situated employees who desire to opt into this litigation.

**D. Notice**

Attached to their motion for conditional certification is the Plaintiffs' proposed notice, which the Plaintiffs claim "is drafted to mirror judicial notice forms that courts have approved in previous cases." Docs. 15-7; 15-8 at 10. In that proposed notice, the conditional class is defined as any and all individuals:

(a) Who have been employed by Forestry Management as "truck drivers, loaders or tree cutters" in the United States from January 18, 2015 to the present; and

(b) Who worked more than forty hours per week and were not paid overtime for their hours worked.

Doc. 15-7 at 3. The Defendants ask the Court to "limit the scope of the proposed class and allow Defendants leave to respond to Plaintiffs' proposed notice and notice plan." Doc. 19 at 10. The Court is not particularly concerned with limiting the scope of the proposed class, given that, as the Defendants acknowledge, Forestry Management is "a small company in a rural Georgia town" and currently employs approximately 17 employees. Docs. 15-8 at 3; 19 at 5. Having granted the nationwide conditional certification, the Court directs the parties to confer regarding the proposed class notice

and the means of disseminating the notice.  The parties are directed to file a Jointly Proposed Notice and accompanying status report by August 24, 2018.  Moreover, to facilitate notice, the Defendants shall provide the Plaintiffs' counsel, within thirty (30) days from the date of this Order, the full names, job titles, addresses, telephone numbers, dates of employment, and locations of employment of all employees who fall within the conditional class definition.[7]

### III. CONCLUSION

Accordingly, for the foregoing reasons, the Plaintiffs' motion for conditional certification (Doc. 15) is **GRANTED**.

**SO ORDERED**, this 3rd day of August, 2018.

S/ Marc T. Treadwell  
MARC T. TREADWELL  
UNITED STATES DISTRICT COURT

---

[7] In their motion, the Plaintiffs also request to have the last four digits of the employees' Social Security numbers.  Doc. 15-8 at 11.  That is not required at this time.  The Plaintiffs also request the Defendants to produce the payroll records of these employees.  *Id.* at 11-12.  The Court addressed this issue during the June 28, 2018 and May 21, 2018 teleconferences.  Docs. 24; 29.  In the event the issue still has not been resolved, the Court will hear from the parties.