**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **JOHN M. MONTFORD,** ) | |
| **WINIFRED WORSHAM,** ) | |
| **RICHARD TURNER,** ) | |
| **LAFONZA TOWNS,** ) | |
| **ALDWIA TOOKES,** ) | |
| **DAVID COLBERT,** ) | |
| **JAMIE KENNINGTON,** ) | |
| **and JEREMY KENNINGTON,** ) | |
| **individually and on behalf of all others** ) | |
| **similarly situated who consent to their** ) | **Case No. 5:18-cv-00019-MTT** |
| **inclusion in a collective action,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **FORESTRY MANAGEMENT** ) | |
| **SERVICE, LLC and BRANDAN** ) | |
| **SPILLERS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**JOINT MOTION FOR APPROVAL OF**
**FLSA COLLECTIVE ACTION SETTLEMENT**

COME NOW the Plaintiffs John Montford, David Colbert, King Colbert, Bobby Day,

Joe Fowler, James Gardner, Derrick Gibson, Stephen Giddens, Alphonso Harris, Cedric

Howell, Dolphus Joiner, Jermaine Joseph, Jamie Kennington, Jeremy Kennington, Gregory

Marshall, Nudis Ogletree, Isaac Stewart, Aldwia Tookes, Lafonza Towns, Maurice Troutman,

Richard Turner, Isiah Walden, Earnest Walker, Ross Washington, and Winifred Worsham

("Plaintiffs") and Defendants Forestry Management Service, LLC ("Defendant FMS") and

Brandan Spillers ("Defendant Spillers") (collectively "Defendants"), by and through their

respective undersigned counsel, and jointly move for the Court to approve the Parties'

Settlement Agreement (attached as Exhibit A), which represents a resolution of a disputed matter under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

In support of this Joint Motion, the Parties state as follows:

## INTRODUCTION

1.      Plaintiff John Montford, who was employed by Defendant FMS to work as a truck driver, initiated this collective action against Defendants, alleging that Defendants incorrectly classified him and other similarly situated employees as exempt from overtime under the Motor Carrier Act exemption. (Doc. 1). The action was amended multiple times to add seven additional Plaintiffs, add additional information concerning the putative class of employees, and correct Defendant Spillers' name. (Docs. 10, 14, 18, 26).

2.      On April 9, 2018, Plaintiff moved the Court for Conditional Certification of a Collective Action to include all truck drivers, loaders, and tree cutters employed by Defendant FMS during the three years preceding the filing of the suit. (Doc. 15).

3.      The Court approved conditional certification on August 3, 2018, and approved the proposed Notice to the potential opt-in Plaintiffs on September 21, 2018, said Notice providing that any person wishing to opt-in to the class had to do so within 60 days of receiving the Notice. (Doc. 38, 48).

4.      At the end of the Notice period, the class contained a total of 25 employees, including the named Plaintiff and the six Plaintiffs who opted in prior to the conditional certification. (Doc. 50).

5.      Plaintiffs believe that the cause of action, allegations, and contentions asserted in this action have merit and that the evidence developed to date supports the causes of action asserted.  Defendants deny Plaintiffs' allegations and deny that Plaintiffs are due any relief

2

because they were properly classified as exempt employees for the duration of the look-back period. Defendants further contend that any claims for liquidated damages under the FLSA are barred under the Portal-to-Portal Act of 1947, as Defendants were at all times acting in good faith and had reasonable grounds for believing that their actions were not in violation of the FLSA. Similarly, Defendants contend that Plaintiffs cannot prove that the conduct of Defendants was willful so as to extend the statutory liability period for a third year.

6.    As the preceding paragraph indicates, this is a highly disputed claim. However, the Parties recognize and acknowledge that the expense in time and money of litigation, the uncertainty and risk of litigation, as well as the difficulties and delays inherent in such litigation, make settlement of this matter a mutually appealing resolution.

7.    Accordingly, the Parties agreed to mediation, which resulted in a Settlement Agreement to resolve the Plaintiffs' claims for overtime wages and liquidated damages, as well as Plaintiff Montford's service award for bringing the claim. The Agreement is set forth in Exhibit A, attached hereto. Pursuant to applicable Eleventh Circuit precedent, this Court is empowered to review and approve the provisions of such settlement agreements in actions brought for back wages under the FLSA. *See* Lynn Food Stores v. United States, 679 F.2d 1350 (11th Cir. 1982). Because the Parties have agreed that the terms reflected in this Agreement are mutually satisfactory and that they represent a fair and reasonable resolution of a bona fide dispute, the Parties respectfully request that the Court approve the Settlement Agreement.

8.    In support of this motion that the Court approve the Parties' Settlement Agreement, Plaintiffs submit that the Settlement Agreement represents a fair and equitable resolution of this matter, given the risks inherent in continued litigation. Plaintiffs' counsel represents that the named Plaintiffs have authorized this resolution. Moreover, all Plaintiffs will

receive a check with release language on the back of it, so that endorsement and/or cashing of the check will constitute a release of Defendants from liability under the FLSA.

WHEREFORE, the Parties respectfully request that this Court approve the Settlement Agreement as a fair and reasonable compromise of disputed issues under the FLSA.

## **MEMORANDUM OF LAW**

9.      Employees can settle and release claims under the FLSA in two ways. First, employees can settle and waive their claims under the FLSA if the Secretary of Labor supervises the payment of unpaid wages by the employer to the employee. *See* 29 U.S.C. § 216(c) (2008); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under the FLSA (as is the case here), an employee may settle and release FLSA claims if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. Lynn's Food Stores, Inc., 679 F.2d at 1353; see also D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946) (discussing propriety of allowing settlement of FLSA claims where district court has reviewed terms of settlement agreement).

10.      In detailing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we

allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Lynn's Food Stores, Inc., 679 F.2d at 1354.

11.    In the instant action, the Court should approve the Parties' Settlement Agreement to resolve Plaintiffs' FLSA claims against Defendants. The proposed Settlement Agreement arises out of an action that was adversarial in nature. The parties disputed the merits of this case, with Plaintiffs contending that Defendants violated the FLSA by improperly classifying them as exempt employees and thereby failing to pay them overtime wages due, and with Defendants disputing Plaintiffs' factual allegations that Plaintiffs were improperly classified. During the litigation and settlement of this action, both parties were represented by competent and experienced attorneys who are well versed in this area of the law.  Plaintiffs and their counsel discussed the claims, and the parties formulated their own proposed settlement figures. Defendants provided a summary of time and pay records to Plaintiffs to allow for a reasoned analysis of their position regarding amounts owed.  The Parties then engaged in settlement discussions, with a mediation conducted by Lee Parks.

12.    The Parties entered into this settlement in recognition of the risks inherent in any litigation – specifically, for Plaintiffs, the risk of no recovery or a recovery that is less than the one obtained through this proposed agreement; and, for the Defendants, the risk of a verdict against them on the merits.  The Settlement Agreement provides Plaintiffs with a compromised recovery of the claimed unpaid overtime wages sought in this lawsuit with applicable liquidated damages, a payment of attorneys' fees and costs to their counsel for prosecuting this matter, and, for Plaintiff Montford, a service award for his being the named Plaintiff; as such, it represents a fair and reasonable compromise of this matter.

13.     Because the Settlement Agreement represents a fair and reasonable compromise over bona fide FLSA wage disputes and was negotiated at arms' length, the Parties respectfully submit that the Court should approve this settlement.

## OVERVIEW OF SETTLEMENT TERMS

14.     Since Defendants classified these employees as exempt, Defendants do not have complete records of the hours worked by the Plaintiffs for the duration of the statutory period. However, Defendants began paying some employees on an hourly basis in 2017, so those records provided a basis upon which Defendants could estimate the possible overtime liability for all employees over during the statutory period. The Parties agree that these estimates for each Plaintiff are the proper basis upon which the settlement amount shall be apportioned.

15.     The Parties recognize that gathering the conflicting testimonial evidence during the liability period and whether the Defendants operated in "good faith" would significantly increase litigation costs and potentially jeopardize the settlement amounts and delay payment of the settlements.  These disputes would likely remain unresolved, possibly involve cross motions for partial summary judgment, and ultimately a trial.

16.     During the mediation, the Parties discussed the strengths and weaknesses of their respective positions.  Notably, the Parties recognized the inherent risks with continued litigation. The Plaintiffs believe that the amount each will receive pursuant to this settlement reflects a reasonable compromise of unpaid wages and liquidated damages that each could expect to recover if each were to prevail on their FLSA claims at trial.  While still denying liability, Defendants believe that the amount each Plaintiff will receive pursuant to this settlement reflects an amount in excess of complete and total satisfaction for any unpaid overtime wages and

liquidated damages each Plaintiff could expect to recover if each were to prevail on their FLSA claims at trial.

17.     The total Settlement Amount is $250,000.00 from which shall be drawn: (1) payments to Plaintiffs (except Plaintiff Montford, see subparagraph (3) below) in the aggregate amount of $99,246.00, proportioned according to the percentage assigned to each Plaintiff[1] from Defendants' estimates for the years 2016, 2017, and 2018, representing back pay for the alleged failures to pay overtime; (2) payments to Plaintiffs (except Plaintiff Montford, see subparagraph (3) below) in the aggregate amount of $99,246.00, as liquidated damages; (3) a payment to Plaintiff Montford in the amounts of $2,500 as a service award, $4,004.00 for failure to pay overtime, and $4,004.00 as liquidated damages, in exchange for a general release of all claims, including but not limited to his wage claims; and (4) a payment to Plaintiffs' attorney in the amount of $41,000.00 for attorneys' fees and expenses of litigation.

18.     The amounts to be paid to each of the Plaintiffs for the alleged underpayments and for liquidated damages are shown herein:

| Plaintiff | Total Estimate of Liability 2016-2018 | Percentage | Total Liability | Overtime | Liquidated |
|-----------|---------------------------------------|------------|-----------------|----------|------------|
| David Colbert | $58,386.91 | 10.47% | $20,753.73 | $10,376.86 | $10,376.86 |
| King Colbert | $12,264.59 | 2.20% | $4,359.47 | $2,179.73 | $2,179.73 |
| Bobby Day | $70,869.38 | 12.71% | $25,190.64 | $12,595.32 | $12,595.32 |
| Joe Fowler | $19,090.96 | 3.42% | $6,785.92 | $3,392.96 | $3,392.96 |
| James Gardner | Outside the Statute | 0.00% | $100.00 | $50.00 | $50.00 |
| Derrick Gibson | $54,196.37 | 9.72% | $19,264.19 | $9,632.10 | $9,632.10 |
| Stephen Giddens | $11,019.89 | 1.98% | $3,917.04 | $1,958.52 | $1,958.52 |
| Alphonso Harris | $4,348.92 | 0.78% | $1,545.83 | $772.92 | $772.92 |
| Cedric Howell | $4,007.64 | 0.72% | $1,424.52 | $712.26 | $712.26 |

---

[1] Plaintiff Montford's service award, overtime damages, and liquidated damages were separately negotiated since he was the named Plaintiff. In addition, the employment of Plaintiffs Gardner, Walden, and Washington with Defendant FMS ended prior to November 28, 2015, and thus are outside of the three-year statute of limitations. Plaintiffs Gardner, Walden, and Washington will each be paid a sum of $100.00 (including liquidated damages) in consideration for a release of their wage claims against Defendants.

| | | | | | |
|---|---|---|---|---|---|
| Dolphus Joiner | $5,548.53 | 1.00% | $1,972.23 | $986.12 | $986.12 |
| Jermaine Joseph | $2,269.69 | 0.41% | $806.77 | $403.38 | $403.38 |
| Jamie Kennington | $5,256.79 | 0.94% | $1,868.53 | $934.27 | $934.27 |
| Jeremy Kennington | $16,624.59 | 2.98% | $5,909.24 | $2,954.62 | $2,954.62 |
| Gregory Marshall | $18,452.65 | 3.31% | $6,559.03 | $3,279.51 | $3,279.51 |
| Nudis Ogletree | $8,490.64 | 1.52% | $3,018.01 | $1,509.01 | $1,509.01 |
| Isaac Stewart | $12,781.97 | 2.29% | $4,543.37 | $2,271.69 | $2,271.69 |
| Aldwia Tookes | $55,964.66 | 10.04% | $19,892.73 | $9,946.37 | $9,946.37 |
| Lafonza Towns | $48,145.95 | 8.63% | $17,113.56 | $8,556.78 | $8,556.78 |
| Maurice Troutman | $39,657.12 | 7.11% | $14,096.19 | $7,048.10 | $7,048.10 |
| Richard Turner | $34,520.43 | 6.19% | $12,270.34 | $6,135.17 | $6,135.17 |
| Isiah Walden | Outside the Statute | 0.00% | $100.00 | $50.00 | $50.00 |
| Earnest Walker | $17,815.87 | 3.20% | $6,332.68 | $3,166.34 | $3,166.34 |
| Ross Washington | Outside the Statute | 0.00% | $100.00 | $50.00 | $50.00 |
| Winifred Worsham | $57,864.34 | 10.38% | $20,567.98 | $10,283.99 | $10,283.99 |
| **Total** | **$557,577.90** | **100.00%** | **$198,492.00** | **$99,246.00** | **$99,246.00** |

Each Plaintiff will receive the amount as shown in the table for underpayment of wages (less applicable taxes and withholdings), with Defendant FMS to issue a W-2 Form to each Plaintiff. Each Plaintiff will also receive the amount as shown in the table for liquidated damages, with Defendant FMS to issue a Form 1099 to each Plaintiff.

21.    The method of calculation used in determining the above amounts is reasonable and does not undermine the broad remedial purpose of the FLSA. It provides Plaintiffs with their compromised overtime that the Plaintiffs claim to have worked without being properly paid during the three-year permissible liability period and an equal amount for liquidated damages, as mandated by the FLSA.

22.    Defendant FMS will also issue a check to Plaintiff John Montford in the amount of $2,500 as a service award, $4,004.00 (less applicable taxes and withholdings) for failure to pay overtime, and $4,004.00 as liquidated damages. Defendant FMS will issue a W-2 Form for the overtime payment and a Form 1099 as to the liquidated damages and the service award.

23.     Plaintiffs' attorney's fees were negotiated separately by the Parties based on the actual time worked by Plaintiffs' attorney and negotiated at arm's length; and Defendants agree that the aggregate sum of $41,000.00 for attorney's fees and costs is fair and reasonable.  The amount paid as attorney fees is a reduction from the total fees incurred, which are set forth on the document attached to the Declaration of McNeill Stokes (attached as Exhibit B to this Motion).

24.     Plaintiffs' counsel also represents that this fee is fair and reasonable pursuant to the factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718 (5th Cir. 1974).  Continuing the litigation would only serve to increase the attorneys' fees, with little if any benefit to Plaintiffs.  Thus, Plaintiffs' counsel represents that this settlement is fair to both the Plaintiffs and their counsel.

25.     Defendant FMS will issue a check in the amount of $41,000.00 to McNeill Stokes, Esq. for the agreed-upon attorney fees, with Defendant FMS to issue a Form 1099.

26.     Defendant FMS will render all payments described herein to Plaintiffs' Counsel within 30 calendar days of the Court's approval of the Settlement Agreement.

27.     The Parties represent that they have reached a reasonable and fair resolution of Plaintiffs' FLSA claims.  The Parties represent that they engaged in a good faith, arms' length negotiations in an effort to resolve the matter.  The record indicates that a bona fide dispute existed regarding the classification of Plaintiffs by Defendants as well as the overtime hours that Plaintiffs claimed they actually worked.

A Proposed Stipulated Judgment, Approval of Settlement and Order of Dismissal is attached as Exhibit C.

## <u>CONCLUSION</u>

All Parties have reached settlement as to all issues and claims, including the issue of attorneys' fees.  The Settlement is contingent on this Court's approval.

Respectfully submitted this the 2nd day of May, 2019.

**ATTORNEYS FOR PLAINTIFFS:**

<u>/s/ McNeil Stokes</u>
McNeill Stokes
5372 Whitehall Place SE
Mableton Ga 30126
(404) 352-2144

**ATTORNEY FOR DEFENDANTS:**

<u>/s/ W. Jonathan Martin II</u>
W. Jonathan Martin II
Constangy Brooks Smith &
Prophete LLP
577 Mulberry St., Suite 710
Macon, GA 31201
(478) 750-8600 (Phone)
(478) 750-8686 (Fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing JOINT MOTION

FOR APPROVAL with the Clerk of Court using the CM/ECF system which will automatically

send email notification of such filing to the following attorney of record:

    McNeill Stokes
    5372 Whitehall Place SE
    Mableton Ga 30126

    This 2nd day of May, 2019.

                 CONSTANGY, BROOKS, SMITH
                 & PROPHETE, LLP

                 /s/ W. Jonathan Martin II
                 W. JONATHAN MARTIN II
                 Georgia Bar No. 474590

577 Mulberry Street, Suite 710
P.O. Box 1975
Macon, GA 31202-1975
(478) 750-8600
jmartin@constangy.com